STENNICK et al. v. JONES et al.

(Circuit Court of Appeals, Ninth Circuit. March 10, 1919.)

No. 3139.

Costs ⚖230—Reversal on Appeal—Costs in Appellate Court.

Where a complainant is compelled to go to an appellate court to obtain any substantial relief, and is there given a decree, he is entitled to recover his costs in that court.

On motions to modify decree of reversal. Addendum, to be considered in connection with original opinion.

For former opinion, see 252 Fed. 345, ——C. C. A. ——.

PER CURIAM. Upon motions and counter motions for modifications.

As to costs: The formal order of this court was for a reversal and an accounting for any liability of defendants under the terms of the contract discussed in the opinion of the court. Inasmuch as appellant had to come to this court for any substantial relief, and has been awarded a decree, the usual rule should prevail, and he should recover his costs in this court.

With respect to personal liability of Jones and Kribs, our opinion holds that they, being parties to the suit and being sued as joint tortfeasors, are liable individually for any property which they or either of them may have taken in their individual capacities, and that the accounting should be had against them as individuals, as well as against the J. K. Company.

Appellant's counter motion is for a modification of the opinion, so that $155,000, for 1,520 acres of Dodge timber land, be included in the accounting, or "at least that an accounting be had for that part of the aforesaid timber land which belonged to the Yale Logging Company." At the time of the trial a stipulation was entered into to the effect that, if findings should be made for the trustee, it should be "considered" that the Hamilton Creek Timber Company and the Rainier Lumber & Shingle Company are the sole owners of "all the property involved in the suit." The trustee also asks that, if this court cannot make an accounting on the record submitted, then that an account be taken of "all the property," and contends that the funds used by the bankrupts in connection with the project of building the railroad and other works "came from the funds of all the creditors alike, and that it is impossible or extremely difficult to trace any particular fund, or determine what particular property was acquired out of the $215,000 received from the sale of bonds."

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Counsel say that the stipulation referred to was made in order that in this suit all property rights of the Dodge corporations should be finally determined, and that the Yale Logging Company, although not a party to the contract was the owner of part of the machinery and chattels converted, and also owned a large part of the 1,520 acres of timber land sold by Dodge for the unpaid purchase price of $155,000 to the J. K. Company.

Defendants' counsel, however, take sharp issue with this argument, and point to the fact, not to be ignored by us, that on its face the stipulation does not purport to affect the property of the Yale Company. That company was not even a party to this suit or to the contract involved herein. It is true that Dodge turned in, as part of the equipment he was to provide under the provisions of the contract, some property owned by the Yale Logging Company, one of the so-called Dodge corporations, and that the J. K. Company furnished the money out of the $215,000 to pay Dodge for this property.

But, now that a controversy as to the effect of the stipulation has arisen, in the absence of any assertion of rights by the Yale Company, this court can make no decree which can bind the Yale Logging Company. It is to be noted that Dodge himself, although a party to the contract involved, was not made a party to this suit; nor was his trustee in bankruptcy impleaded in any way. The reason for not joining such persons as parties is not given, but as the stipulation only authorizes the court to regard the trustee of the two corporations named therein as interested in the contract our jurisdiction is confined accordingly.

Next, as to $155,000 to be paid Dodge: Dodge, as we have held, had an equity, because he had delivered to the J. K. Company the equivalent of $155,000 in money. Dodge's equity was in the railroad and equipment. The money was to be paid to Dodge and used for development. For the purpose of passing legal title to Dodge in the property, the $155,000 was to be regarded and treated as paid at the time that the last installment of the $60,000 was paid. But Dodge having broken his contract, and his creditors having refused to proceed to fulfill its terms, equity will not now come to his relief, for so to do would be to hold that Dodge could break his contract, and yet be relieved of forfeiture under the forfeiture clause. The contract provided for forfeiture of the railroad if there was substantial breach of the contract, and under the authorities cited in the opinion Dodge by reason of his breaches is not in a position to recover anything done under the contract.

The appellees could introduce evidence, as they did, that they were heavily damaged. Such evidence, while not proper for the purpose of recovering a money judgment, was admissible to show that the enforcement of the forfeiture clause was not inequitable. Edmonds v. Spanish R. P. & P. Co. (D. C.) 206 Fed. 92.

The appellees argue that the decree of this court should be in effect a dismissal of the bill, because there are but few possible classes of property not directly affected by the terms of the contract, namely, commissary supplies, railroad material, ties, and such property. They

say these things were upon the land of the J. K. Company, and paid for out of the $215,000, and were put upon the property by Dodge for the purpose of proceeding with the construction of the railroad. But, as the contract did not cover these matters, we hold they are outside of its terms, and ought not to be included.

It is also argued that, even under this construction of the contract, the results will not be changed by an accounting, provided the equities of the case are given due consideration. These equities are said to be the losses sustained by the J. K. Company, said to be $480,000, and also $50,000, representing a loss sustained by Jones and Kribs as individuals, because they gave their credit to Dodge in the loan referred to in the principal opinion. Jones and Kribs, being the sole stockholders of the J. K. Company, ask that their position be regarded as though the J. K. Company had loaned its credit to Dodge and had sustained this loss of $50,000. Appellee is right in the position that this item is fairly to be considered. But it is not for us to say on this record that the value of items which appellant may properly include in the accounting is less than the amount of $50,000 or any other sum. We think appellant should have an opportunity to introduce evidence upon the issue as it is now defined.

Let this addendum be considered in connection with the original opinion.